# BROWNSVILLE NAVIGATION DISTRICT
## INTEROFFICE MEMORANDUM

**To:** Donna Eymard
**CC:** Jo Saban
**From:** Deborah Lee Duke
**Subject:** Response to Memo Dated 07/21/03 by Vidal Cantu
**Date:** July 28, 2003

My first comment to you regarding the memorandum from Vidal Cantu is that it represents a violation of the District's Dispute Resolution Procedure. As such, the proper response to Mr. Cantu is to direct him to file the proper request for review of the disciplinary action with the proper person, with a copy to the Personnel Department. This request should not have been directed to Ms. Saban but to me. This is typical of Mr. Cantu's handling of problems with discipline in the department, he by-passes the District's established procedures for handling these problems and takes them to the EEOC or to supervisors outside of the department.

With that said, I would address the disciplinary action that Mr. Cantu is disputing. The reprimand was not issued over work performance. It was issued over Mr. Cantu's manner in responding to my questions regarding a work-related issue. This was made clear to Mr. Cantu during our meeting to discuss the reprimand. This meeting was taped, and should this issue be pursued, a review of the tape will indicate that Mr. Cantu was informed that this was the basis for the reprimand, not the work issues.

In reading Mr. Cantu's memorandum regarding the use of tape recordings during any meeting, I agree that he should not be made to attend any meeting that he feels necessary to record, but I do not agree to be recorded in all of my dealings with Mr. Cantu. Any further communications that need to be made to Mr. Cantu will be made in a written memorandum, and he will not be allowed to attend any meetings that he would insist on recording. I will inform Mr. Cantu of this in a memorandum.

Mr. Cantu makes an issue of the cross-training in the department. This is standard in the department, and is necessary to the smooth operation of the department during vacation or other absences. The training for contracts that is referenced is the same training as is given for the open purchase orders. Mr. Cantu has the training, but he has not been assigned the responsibility. These are two separate issues.

Ricky Rodriguez was hired as an accounting clerk. One of the qualifications that he had that made him stand out in the hiring process was his training in payroll. He was hired specifically to run the payroll as one of his primary duties, at the same time that Mr. Cantu was assigned Accounts Payable as his primary duty. The clerical staff in the department has three areas of primary responsibility: Accounts Payable, Accounts Receivable and Payroll. As I do not have three Accounting Clerks, Accounts Payable and Payroll



EXHIBIT
E-10
000227

currently have been assigned to the two Accounting Clerks, and Accounts Receivable is currently handled by the two Bookkeeping Specialists. In a previous filing with the EEOC, Mr. Cantu has charged me with discrimination in not assigning him the payroll duties. I responded to those charges then, as I do today, that Mr. Cantu has never requested of me that he be assigned to those duties. He did, however, file charges with the EEOC in his first complaint that he did not get training for the Accounts Payable duties. In response to the ruling from the first EEOC complaint, he has received the training, as well as the assignment of the responsibilities, for Accounts Payable.

I do not usually assign additional primary duties to the Accounting Clerk that is handling Accounts Payable. Mr. Cantu's case is no exception.

Mr. Cantu brings up the issue of the switchboard relief. In the first EEOC mediation, Mr. Cantu agreed to accept this duty in exchange for an increase in pay. He also agreed that this would cease to be an issue. The District increased Mr. Cantu's pay in accordance with the EEOC decision, yet Mr. Cantu continues to violate this provision by repeatedly bringing this up as an issue in his complaints. I understand that Mr. Cantu claims that his training for Accounts Payable was not started as required by the EEOC decision. I dispute this allegation. One of the skills needed to perform the Accounts Payable function in this department is a basic understanding of and ability to work with an Excel spreadsheet. Mr. Cantu was given additional worksheet projects to develop these skills. He continued to require assistance in these projects, even up to the time we began the Accounts Payable training. He continues to have some problems in working with Excel, and needs to have his formulas verified periodically.

Mr. Cantu compares the situation that Veronica Ramos had in dealing with past-due invoices to the situation we are now in. During Ms. Ramos' tenure in my department, the majority of the past-due invoices were due to a backlog of paperwork in the Facilities Maintenance Department. With her transfer into that department, she has cleared the backlog. Now, any past-due invoices are usually due to other factors. I have given Mr. Cantu instructions that he is to give Letty Trevino any and all invoices that are over three weeks of age that he is not able to immediately process for payment. She is to work on these invoices to resolve the issues that have caused the hold-up in payment. Our goal is to pay all invoices within the terms of 30 days. I have discussed with Mr. Cantu the fact that there are a large number of invoices that can be processed for payment without pending issues. These are to be his focus. Those that were not able to be processed were taking too large a part of his time, and were causing a backup of work.

Mr. Cantu brings up an issue with an invoice from the Bank of New York. This is for an investment-tracking software that I allowed the licensing to expire on in November, 2002. The Bank of New York has been invoicing the District in the hopes that we would re-license the software, but until we again began to invest our funds, there was no need for the software. (The software is not active until the registration key is received.) Mr. Cantu brought this invoice to me several times, and I had this discussion with him regarding the fact that I was not ready to pay it each time. In May, I processed the purchase requisition,

and passed a copy of the invoice on to Mr. Cantu. In late June, we received a phone call asking if we were ever going to re-license the software. At that time, I discovered that the purchase requisition had not been processed, and I asked Mr. Cantu if he had the invoice. His response was that he did not, nor did he remember ever seeing it. I made no further comments to him regarding this invoice at that time. I later found that Mr. Cantu had approached his co-workers to look for the invoice. Mr. Cantu later came into my office and told me I had better have the vendor fax a copy of the invoice because I never gave it to him. I told Mr. Cantu at that time that it was my decision how to get a copy of the invoice, and that I would handle it. I reminded him at that time that he had had the invoice, as he had asked me about it several times, and he responded that he had given the invoice to Letty Trevino.

One of the problems that Mr. Cantu is having in his position is the processing of the same invoice for payment twice. This is arising out of his use of copies of documents to substitute for originals. While this is permissible in limited instances, it does allow for the duplicate payment of invoices if it is not carefully monitored. I have instructed Ms. Trevino to be cautious when verifying a voucher that is based on copies of documents. Mr. Cantu takes exception to this verification, even though we are still catching duplicate vouchers at this point. He has been instructed to be certain that the original documents are not available to him before going to Ms. Gawenda to make copies of documents, but this instruction for caution causes a great deal of friction in the working of the department.

During our last discussion, Mr. Cantu reported feeling that his duties of Accounts Payable were preventing him from doing other duties in the department. We discussed a plan to have Ricky Rodriguez undertake the duties of Accounts Payable on Mondays and Fridays, and for Mr. Cantu to take over the duties performed by Mr. Rodriguez on those days as well as to be available for other job assignments. Mr. Cantu said at that time that he felt that would be very agreeable to him. We did discuss the fact that Mr. Rodriguez would be using his desk and files on those days, and Mr. Cantu indicated he understood and had no problem with that. Mr. Cantu did question me as to what Ms. Trevino was able to do to get the problem invoices resolved that he could not do. That was a valid question. We agreed that on the Mondays and Fridays that he was not going to be working on the Accounts Payable, that he would sit with Ms. Trevino as she worked on the problem invoices to see how she approached their resolution. I told Mr. Cantu I would consider this option during the week I was out. In reading the memo of July 21, 2003, Mr. Cantu seems to have taken exception to this part of the discussion. In light of this, I have reconsidered this plan to relieve Mr. Cantu of the stresses he reported to me from this position.

It is at Mr. Cantu's insistence that he was trained to the Accounts Payable. I believe that he has found that this job assignment is no more exciting than the one he held before. In this department, there are no easy or exciting assignments. Accounting work is tedious, repetitive work, no matter what the assignment. I find that there are certain personalities that find satisfaction in this type of work, and that there are those who do not.

At this point, I have assigned Mr. Cantu to job responsibilities that he is not handling well. The Accounts Payable duties seem to cause stress to Mr. Cantu which he is not able to cope with. At times, he is reasonable and easy to work with, at others, especially when he is under stress; he is a difficult employee to work with. The transfer to the Accounts Payable duties does not seem to have made Mr. Cantu any happier in his employment in the department. It has caused disruption in the operation of the department, as I have had to put additional support in place to assist with problem invoices. At this point, I would like to implement the following reassignments of duties; to put Mr. Cantu back into work he was able to be successful at:

**Duties – Vidal Cantu**

| | |
|---|---|
| Daily Roll Call | Voucher Copy Filing |
| Daily Cash Deposit | PUB Billing Log Book |
| Accts Payable Posting | Records Retention Assistance |
| Accts Payable Check Distribution | Dept. Mail Processing |
| Payroll Check Distribution | Capital Project File Copies |
| Accounts Payable Filing | Miscellaneous Copies |

**Duties – Ricky Rodriguez**

| | |
|---|---|
| Accounts Receivable Posting | EFT Filing |
| Leasing Invoicing/Services Billing | Accounts Receivable Filing |
| Agents Rebates | Payroll-Related Journal Posting |
| Service Charges | Invoice Register and Cash Book Posting |
| Payroll | Running Bank Balance Posting |
| Payroll Fund Transfer Vouchers | Bank Statement Reconciliation (except BND11) |
| BRG Fund Transfer Vouchers | Records Retention Assistance/Minutes Books |

**Duties – Letty Trevino**

| | |
|---|---|
| Accounts Payable | TxDOT Report |
| Accounts Payable Fund Transfer Voucher | Bank Statement Reconciliation (BND15) |
| Taxes Receivable Reconciliation | Backup for Purchasing Manager |
| Overweight Permit Log | Misc. G/L Reconciliations |

**Duties – Rosie Hinojosa**

| | |
|---|---|
| Accounts Payable Voucher Approval | Fixed Asset Reconciliation and Depreciation |
| Accounts Receivable Collections | Investment Interest Log |
| Review and Posting of Accounts Payable | Misc. G/L Reconciliations and Journal Entries |
| Review and Posting of Accounts Receivable | |

With your approval, I would like to implement these changes as soon as possible.



# BROWNSVILLE NAVIGATION DISTRICT
## INTEROFFICE MEMORANDUM

**To:** Vidal Cantu, Jr.
CC:

**From:** Deborah Lee Duke
Director of Finance and Administration

Subject: Disciplinary Action

**Date:** December 8, 2003

I have had reports from several employees that on last Thursday, due to Petra Champion's absence, you were requested to cover the switchboard for the receptionist's lunch period. This occurred while I was out of the office at a seminar.

It has been reported to me that you made several statements regarding your opinion that this duty was unfair to you, and that you did not want to do it. You went to Vicky Mercado to request that she help you to get someone else in the department to cover this duty for you. You had a heated conversation with Cristina Valdez, during which you made several comments that resulted in her opinion that you were unwilling to do this duty. The result of this was that you informed Cristina that you had upset yourself to the point that you needed to leave for the afternoon, and subsequently did not relieve the receptionist for her lunch break.

I would remind you that you have agreed under our mediation agreement that you would accept the switchboard relief duty and would cease complaining about the duty in exchange for specific actions on the part of the District, including an increase in pay and training for the position you now hold.

This is not the first time that this subject has been brought up by you, and you have been reminded that this is your responsibility, and that you are expected to do this duty when requested.

Your refusal to cooperate with Cristina Valdez when she informed you that you needed to cover the switchboard at the noon hour due to Ms. Champion's absence is a serious disciplinary problem. There is no excuse for the amount of emotional trauma, including that to yourself, that this situation caused. You are responsible for taking on this duty when it is necessary, and there is no need for any discussion about whether or not you will agree to do it.

**You are hereby suspended for one day without pay. Your suspension will be on Tuesday, December 9, 2003. You may return to work as usual on Wednesday, December 9, 2003.**

I would hope that this disciplinary action will stress to you how important it is for you to control your reactions to your co-workers in the department. There is no place for the type of outbursts that occurred on last Thursday, nor will they be tolerated in the future.

EXHIBIT
E-11

Should you wish to dispute this disciplinary action, you have the right, under the District's Dispute Resolution Procedure, to request a review of the action. A copy of the District's Dispute Resolution Procedure is attached.

| SECTION FIVE | DISPUTE RESOLUTION |
|---|---|

DISPUTE RESOLUTION PROCEDURE                                    Item 500

The following procedure will be followed when an employee wishes to present a grievance concerning his/her·wages, hours of work, or conditions of work (including disciplinary measures or termination):

1.  The employee will submit a request in writing for a resolution of his/her grievance, along with any other documents deemed relevant by the employee, to the immediate supervisor, with a copy delivered to the Level 2 Supervisor of the department in which the employee works (if different) and to the Personnel Department. This request must be filed within 10 days of the occurrence of the cause. The supervisor will investigate the matter and notify the employee of his/her decision in writing within 3 working days after receipt of the request.

    · If the grievance concerns sexual harassment, the employee has the option of skipping this step and proceeding with step 2.

2.  The employee may request an appeal of the supervisor's decision within five working days after the notification of the decision. The appeal will be made to the Director of Personnel and may include any evidence the employee wishes to submit.

    The Director of Personnel will appoint a Review Committee composed of the Director of Personnel, one Level 2 Supervisor and one Level 3 Supervisor, neither of whom shall be in the employee's direct chain of command. The Director of Personnel will serve as the chairman of the Committee. In the event the Director of Personnel is in the chain of command of the affected employee, the Port Director will appoint the Committee and name the chairman.

    The Committee will review any evidence or interview any individuals deemed appropriate. Only evidence or individuals which pertain to the issue in question will be considered. No character witnesses will be allowed. After considering the evidence and within 15 working days of the submission of the appeal and will notify both the employee, his Level 2 Supervisor and the Port Director of the decision in writing.

3.  If the employee wishes, he/she may appeal the decision of the Review Committee to the Port Director. Such appeal must be in writing, must list the areas in which the employee believes the Director of Personnel to be in error and must be submitted within 5 working days after notification of the decision by the Director of Personnel. New evidence will not be allowed. The Port Director will investigate the facts of the appeal and render a written decision to the employee and the Director of Personnel within 5 working days.

| SECTION FIVE | DISPUTE RESOLUTION |
|---|---|

> **This decision shall be made on behalf of the Port Authority and shall be final.**

If the supervisor, Director of Personnel or Port Director are out of the office during the time allotted for reaching a decision due to a regularly scheduled vacation, an emergency, business travel or other similar bona fide reasons, the time out of the office will not be counted as part of the allotted days.

All requests for dispute resolution shall be maintained in a permanent grievance file to the extent that such documents are made available to or received by the Personnel Department.

# BROWNSVILLE NAVIGATION DISTRICT
## INTEROFFICE MEMORANDUM

**To:** Vidal Cantu
**From:** Debby Duke
**Subject:** Reprimand
**Date:** December 11, 1997

---

I have reviewed your time cards for the three days that I was out of the office attending a seminar in Austin. I am disappointed to see that you did not follow my instructions regarding your working hours during my absence.

On the Tuesday before I left, I held a meeting with the employees in the department to make sure that each one of you understood what was expected of you in terms of attendance during my absence. I was explicit that lunch hours were to be taken during the period of 12:00 to 1:00, and that under no circumstances were any of you to be alone in the office at any time, especially during the noon hour. I also requested that each of you make sure to arrive at the office on time each day.

In reviewing your time card, I noted that you arrived at 8:15 on Wednesday, and you left for lunch at approximately 12:30 that day. On Thursday, you left for lunch at approximately 12:09 and on Friday you left for lunch at approximately 12:19, taking one hour and 22 minutes for lunch that day.

Additionally, I had instructed you to leave the office on Friday at 3:30, to arrive at the banquet site at 6:30, and to use the remaining hour and a half to set up at the banquet and to take care of the employees as needed until I was able to arrive from the airport. I arrived shortly after 7:30, and you did not arrive until nearly 8:00. I also noted that you did not leave the office on Friday until after 4:00.

You have stated that you needed time on Friday to get your hair cut, and therefore you went to Mr. Cockrill for permission to take a lunch break that differed from my direct instructions to you. On Tuesday, when my instructions regarding lunch breaks during my absence were issued, I specifically stated that any errands that needed to be run should have been run on that day.

You were well aware of the reasons behind my instructions regarding the lunch hour. You were also aware that Cristina and I were calling in to the office on a regular basis, no less than three times a day. If you suddenly discovered that you needed a hair cut, you had ample opportunity to notify either one of us, and we could have made the decision as to when you should have gone to get it done.

You also were well aware that you were expected to be at the banquet site at 6:30 to assist the other members of the department in setting up for the banquet. This banquet is a function of our department, and with my expected absence for the setup, I expected the



000099

remainder of the department to be there to make sure that everything was running smoothly.

In order for this department to run efficiently, I need to be able to depend on all of the members of the department to follow instructions. This is especially true when I am not in the office. I expect that during my absence that the members of this department continue to do their assigned duties just as though I were standing over them. I expect that any special instructions that I issue for the duration of my absence will be followed. I make it a point to be accessible during my absences, so there is ample opportunity for you to keep me informed of problems that arise, and and for you to request exemptions from my instructions for unforeseen situations as they arise.

As always, should you disagree with the contents of this memorandum, you may dispute them by following the procedures outlined in your employee handbook.

I would hope that you will take this memorandum to heart, and that you will be more attentive to the fact that you are expected to comply with the instructions that you are given in this office. We are heading to a period of time during which we will have an opportunity to enjoy our families and to recharge ourselves for the New Year.

Take this time to prepare yourself for the coming year and greet 1998 with a new resolution to your work in this department. If I can be of any assistance in this process, I am always ready to help you.

This memo was discussed with me on 12/11/97

_____

Vidal Cantu

*Note –*
*Employee refused to sign.*
*Deborah Lull Oake*
*12/11/97    3:45 – 4:30 PM.*

**BROWNSVILLE NAVIGATION DISTRICT**
**MEMORANDUM**

**TO:** Vidal Cantu
**FROM:** Cristina Valdez
**DATE:** April 13, 1995
**— RE:** Reprimand

I have noticed that your attitude toward your co-workers is becoming hostile and your job performance has shown a marked deterioration. Specifically:

> Yesterday afternoon, I heard you using profanity in the hallway. I have also received reports from other employees that you have used profane language in addressing them. This is considered harassment, and will not be tolerated.

> Your work is showing an increase in the number of errors that you are making. This is causing Letty and myself to spend an increasing amount of time correcting them. While I am prepared to show patience for a certain number of errors, the high numbers of errors being made, along with a change in your behavior, indicates that this carelessness is the result of a lack of desire to do a good job.

I realize that you are having personal problems, we all do, but you are letting them interfere with your relationships with your co-workers and your job performance. You must resolve this situation.

I would like for you to take this holiday and weekend to relax and try to analyze your behavior. Any further problems of this nature will result in a higher level of disciplinary action which can include time off without pay or termination of employment.

As your supervisor, I want to help you to be a successful member of this department, and I am hoping that this memo will serve to stimulate you to make the necessary changes.

This memo has been discussed with me and I understand that it will be placed in my permanent file.

_Vidal Cantu_                    04/13/95
                                 **Date**

000103                           EXHIBIT
                                 E-13