United States District Court
Southern District of Texas
ENTERED

OCT 13 2005

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VIDAL CANTU, JR., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-04-118 |
| | § | |
| BROWNSVILLE NAVIGATION | § | |
| DISTRICT and DEBORAH LEE DUKE | § | |
| | § | |
| Defendants. | § | |
| | § | |

## ORDER & OPINION

BE IT REMEMBERED, that on October 13, 2005, the Court **GRANTED IN PART** and **DENIED IN PART** Defendants' Motion for Summary Judgment [Dkt. No. 19]. The Court **DENIED AS MOOT** Defendants' The Port of Brownsville and Deborah Lee Duke Motion to Dismiss [Dkt. No. 13] and Defendants' Brownsville Navigation District of Cameron County, Texas Misnamed as The Port of Brownsville and Deborah Lee Duke First Amended Motion to Dismiss [Dkt. No. 18]. The Court **GRANTED** the motion for summary judgment for claims against Deborah Lee Duke, claims for intentional infliction of emotional distress, claims for Title VII sex discrimination, and Title VII retaliation claims. The Court **DENIED** the motion for summary judgment for breach of contract claims.

### I.
### Introduction

Plaintiff Vidal Cantu, Jr. filed this employment discrimination suit on July 12, 2004 in this Court. He alleges he was discriminated against based on his sex and alleges his employer, Brownsville Navigation District of Cameron County ("the District"), and his immediate supervisor, Deborah Lee Duke, retaliated against him following his second complaint to the Equal Employment Opportunity Commission ("EEOC"). Additionally, Plaintiff alleges a breach of contract action based on a delay in providing training that was

required by a mediation settlement agreement in response to an earlier EEOC complaint.

## II.
## Procedural Background

The motion to dismiss was filed on March 14, 2005; the amended motion to dismiss was filed on April 28, 2005. On May 5, 2005, Plaintiff's counsel filed a motion to withdraw as attorney. [Dkt. No. 20] The Court granted the Motion to Withdraw as Attorney because counsel had accepted a job outside of the Brownsville area and would no longer practice law. [Dkt. No. 21]  The Court allowed Plaintiff an additional 60 days to file a response to Defendants' Motion for Summary Judgment to enable Plaintiff time to secure new representation. [Dkt. No. 23]  Plaintiff's response to Defendants' motion was due on July 18, 2005. This date was articulated in both the Court's order granting Plaintiff an extension of time and in an amended scheduling order entered soon thereafter.  It has come to the Court's attention, however, that these orders were not sent to Plaintiff.  To permit Plaintiff adequate time, the deadline for a response to the motion for summary judgment was extended to October 3, 2005.

Between March 14, 2005 when the Motion to Dismiss was filed and May 6, 2005 when Plaintiff's counsel withdrew, Plaintiff filed Plaintiff's First Amended Complaint in response to Defendants request in the motion to dismiss that Plaintiff replead. [Dkt. No. 15] Plaintiff in the amended complaint removed the defamation and negligence causes of action.  The amended motion to dismiss reduced the scope of the motion to dismiss to only the intentional infliction of emotional distress claims. The Court twice extended the time for Plaintiff to respond to the Motion for Summary Judgment.  On the second deadline, October 3, 2005, Plaintiff had not obtained new counsel and had not responded to Defendants' Motion to Dismiss or Defendants' Motion for Summary Judgment.  The Court considers these motions at this time.

## III.
## Factual Background

The Brownsville Navigation District of Cameron County hired Cantu in 1993 as a receptionist.  In 1994 he was promoted to accounting clerk although he was expected to

retain some duties related to his former position including coverage during the new receptionist's breaks and absences. Plaintiff filed an EEOC Charge of Discrimination based in part on the phone coverage duties. The parties entered into a mediation settlement agreement on May 29, 2001 providing that Plaintiff would continue to assist with the receptionist tasks when needed in exchange for an hourly pay increase. Also, the agreement mandated that he receive training within ten days. Both parties agree that although the training was not offered in compliance with the deadline specified in the agreement, the training was provided eventually . Plaintiff filed a second EEOC charge in early 2002 complaining about the training schedule, continued sex discrimination, and retaliation.

## IV.

## Motion to Dismiss

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is "viewed with disfavor and is rarely granted." *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 365 (5th Cir. 2000); *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247(5th Cir. 1997), quoting *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). Fifth Circuit law dictates that a district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). *See also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See also Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986). The Fifth Circuit has held, however, that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted). The Defendants' Motion to Dismiss addresses the same issues as the Defendants' Motion for Summary Judgment, and therefore, the Court **DISMISSES AS MOOT** the Amended Motion to Dismiss.

## V.
## Motion for Summary Judgment

Summary judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual controversies, if any exist, are resolved in favor of the nonmoving party. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc). The party making a summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings and discovery documents that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Although the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," *Celotex Corp.*, 477 U.S. at 327, the party "need not negate the elements of the nonmovant's case." *Little*, 37 F.3d at 1075 (*citing Celotex*, 477 U.S. at 323).

If the moving party meets this burden, the non-movant must designate specific facts, beyond the pleadings, showing there is a genuine issue for trial. Fed R. Civ. P. 56(e). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Little*, 37 F.3d at 1071 (*citing Celotex*, 477 U.S. at 325). When the moving party has carried its burden under Rule 56(c), the nonmovant must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant must present more than a mere scintilla of evidence. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994). The evidence must be viewed in the light most favorable to the nonmovant. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 228 (5th Cir. 2003); *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000). Summary judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *Little*, 37 F.3d at 1071.

# VI.
## Analysis
### A. Election of Remedies

Pursuant to Texas Civil Practice and Remedies Code section 101.106, if a suit is filed under the Texas Tort Claims Act "against both a governmental unit and any of its employees, the employee shall immediately be dismissed on the filing of a motion by the governmental unit." In the present case, Plaintiff filed suit in tort against the Port of Brownsville, a governmental unit properly named the Brownsville Navigation District of Cameron County, Texas as well as a supervisor, Deborah Lee Duke. The District is a governmental unit, and Duke is an employee. Therefore, the Court **DISMISSES** all claims against the employee, Deborah Lee Duke.

### B. Intentional Infliction of Emotional Distress

A governmental unit exercising governmental functions is not answerable in a suit sounding in tort, except as specifically provided in the Texas Tort Claims Act ("the Act"). *Edwards v. Nederland Indep. Sch. Dist.*, 930 F. Supp. 272, 276 (E.D.Tex. 1996). The Act defines a governmental unit as a political subdivision of the state including a navigation district. Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). Sovereign immunity is waived only to the extent that the Texas Tort Claims Act assigns liability. Tex. Civ. Prac. & Rem. Code 101.025. The Tort Claims Act waives immunity for three types of claims: (1) claims arising from the operation or use of motor-driven vehicles or equipment; (2) claims caused by a condition or use of tangible personal or real property; and (3) claims arising from premise defects. Tex. Civ. Prac. & Rem. Code § 101.021, 101.022. However, no waiver of immunity exists under the Act for claims arising out of intentional torts. Tex. Civ. Prac. & Rem. Code § 101.057. *See Kesler v. King*, 29 F. Supp. 356, 375-76 (S.D.Tex. 1998).

The District is a governmental unit under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). Plaintiff's claim for intentional infliction of emotional distress concerns the alleged extreme and outrageous behavior of his supervisor at work. The Act does not waive immunity for this type of claim. Since Plaintiff has not brought an intentional infliction of emotional distress claim under any exception provided in the Act,

the District is entitled to summary judgment as to this state tort law claim. *See Edwards* at 276. The Court **GRANTS** summary judgment for Defendants on Plaintiff's intentional infliction of emotion distress claims.

### C. Breach of Contract

Plaintiff and the Brownsville Navigation District entered into a mediation settlement agreement in response to EEOC charge 360A10730 on May 29, 2001. The parties agreed that Cantu's pay would be increased to nine dollars an hour, Cantu would continue to provide switchboard relief during breaks, and the District would provide Cantu with training "in the areas of posting accounts receivable, preparing accounts payable vouchers, and maintaining accounts receivable logs" with no promise of a promotion. The agreement specified that the District would institute the training within ten days of the receipt of the finalized settlement agreement.

Both parties acknowledge that the training occurred more than ten days after the completion of the final settlement agreement. Additionally, Cantu acknowledged in his deposition that he has refused to perform the switchboard relief duties to which he agreed in the settlement on at least one occasion. Plaintiff alleges that Defendants breached the contract by providing training after the deadline. Defendants contend that Plaintiff's refusal to perform the telephone duties in December 2002 nullified the contract.

The Fifth Circuit has held that federal law governs settlement agreements in employment discrimination actions brought pursuant to Title VII. *Fulgence c. McDermott*, 662 F.2d 1207, 1209 (5th Cir. 1981). Such agreements are construed according the federal common law of contracts derived from general principles of contract. *Kessell v. Mega Life & Health Ins.*, 2005 WL 383700 *3 (N.D.Tex. 2005). Under principles of general contract law, rescission is available only to a party whose counterpart committed a material breach. *Id.* at *4. In determining the materiality of a breach, "the less the nonbreaching party is deprived of the expected benefit, the less material the breach." *Id.*(*citing Hernandez v. Gulf Group Lloyd's*, 875 S.W.2d 691 (Tex. 1994)).

Defendants contend that the contract is null following Plaintiff's breach of his obligation to cover the phones one day in December 2002. Defendants are not entitled to

rescission because this breach is not material within the context of a twelve year employment relationship during which Plaintiff has covered the switchboard when needed. Additionally, Defendants' delay in providing the training specified in the agreement did not deprive Plaintiff of the expected benefit; this action merely delayed his receipt of the benefit. The Defendants' actions do not rise to the level of a material breach and therefore, rescission is not appropriate. Both parties remain bound by the terms of their agreement.

Defendants contend that Plaintiff's suit is based on matters covered by the settlement agreement between the parties. Public policy favors voluntary settlement of employment discrimination claims under Title VII. *Rogers v. General Electric Co.*, 781 F.2d 452, 454 (5th Cir. 1986). A general release of Title VII claims does not ordinarily violate public policy. *Id.* An employee may validly release only those claims arising from acts or practices that occurred prior to the release; an employee may not waive prospective Title VII rights. *Id.*

Defendants argue that Plaintiff should forfeit any benefits received under the settlement agreement before proceeding with this suit. While the settlement agreement signed in 2001 covers matters that occurred prior to 2001, the agreement does not limit Plaintiff's ability to file a new EEOC charge for acts or practices occurring between 2001 and the present. In 2002, Plaintiff filed a second EEOC charge in which he complained about the training schedule, Title VII sex discrimination, and retaliation for his filing of the initial EEOC charge. Plaintiff received a right to sue letter from the EEOC and filed the present suit. Any claim settled by the 2001 agreement may not be pursued in the present case; however, claims based on events after the 2001 agreement and included in the EEOC charge are permissible. Plaintiff is under no obligation to forfeit his pay raise in order to proceed with a suit based on acts not covered by the agreement.

Defendants argue that Plaintiff is required to seek enforcement of the agreement through the EEOC. However, the requirement that a party notify the EEO Director if the other party to the agreement has failed to comply applies only to specified federal employees and agencies. *See* 29 C.F.R. § 1614.504, 1614.103. The settlement agreement between Plaintiff and Defendants includes language that contemplates "a

subsequent proceeding in which the breach of this agreement is alleged." [Ex. C] The agreement states that it may be specifically enforced in court. Finally, no language in the agreement limits Plaintiff's ability to pursue a breach of contract action for noncompliance. Plaintiff's ability to sue based on breach of the 2001 settlement agreement is not limited by statute or by the language of the contract.

Plaintiff and Defendants agree that a contract exists between the parties in the form of a mediation settlement agreement. Both parties admit that they have not fully complied with the terms of the agreement. Therefore, while both parties state a claim for breach of contract, neither party is entitled to rescission due to a lack of materiality. Both parties remain bound by the terms of the agreement. The Court **DENIES** Defendants' Motion for Summary Judgment for breach of contract claims.

### D. Title VII Sex Discrimination and Retaliation

Title VII prohibits discrimination with respect to compensation, terms, conditions, or privileges of employment because of sex. 42 U.S.C. 2000e-2. A Title VII plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A prima facie case of discrimination requires four elements: (1) that the individual is a member of a protected class; (2) that the individual was qualified for the position; (3) that the individual suffered an adverse employment action; and (4) that the individual was replaced by or treated less favorably than someone outside the protected class. *Grimes v. Tex. Dept. of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).

Under the present facts, Plaintiff is male and claims he was discriminated against in his employment because of his sex. Plaintiff is qualified for his current job as an accounting clerk. Plaintiff has been employed by the District since 1993, and he filed an earlier EEOC charge concerning his employer's failure to train and promote him during 1997. That complaint resulted in the 2001 mediated settlement agreement between the parties that is the subject of the breach of contract claims in this case. However, the Title VII claims in this case concern events that occurred after the execution of the 2001 agreement and that form the basis for Plaintiff's second EEOC charge complaining of a

breach of the settlement agreement, sex discrimination, and retaliation. Plaintiff provides no evidence of an adverse employment action by Defendants in the period of time covered by the March 8, 2003 EEOC charge.

Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting or compensating. *Green v. Administrators of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002). *See also Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995). Plaintiff complains that Defendants have failed to promote him and have retaliated against him for filing an EEOC charge. However, the evidence shows that Cantu has not applied for a promotion since the 1997 incident that resulted in the initial EEOC complaint and settlement agreement. While Plaintiff's personnel file includes several reprimands and disciplinary memos, these actions do not constitute ultimate employment decisions. Plaintiff does not complain of any action by the employer that rises to the level of an ultimate employment decision, and therefore, Plaintiff has not established the adverse employment action element of a prima facie case for sex discrimination. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment for all Title VII claims based on sex discrimination.

Under Title VII, it is unlawful for an employer to discriminate against an employee because he has made a charge of discrimination. 42 U.S.C. 2000e-3(a). The Fifth Circuit standard for a retaliation claim under Title VII requires three elements: (1) the employee engaged in an activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997). Title VII was intended to address ultimate employment decisions, not to address every decision made by employers. *Id.* at 707. Ultimate employment decisions include "hiring, granting leave, discharging, promoting, and compensating." *Id.* Events that may affect future employment such as disciplinary filings, reprimands, hostility from fellow employees, and employee anxiety do not rise to the level of ultimate employment decisions, and thus, these occurrences do not satisfy the adverse employment decision element of a retaliation claim.

Plaintiff engaged in a protected activity by filing an EEOC charge twice. This case addresses the acts or practices complained of in the second EEOC charge including a claim of retaliation against Cantu for filing a sex discrimination complaint. Plaintiff alleges a failure to train and promote him during 1997 in his amended original complaint. These employer actions occurred prior to the 2001 settlement agreement and constituted the basis of the earlier EEOC charge. These events are not the subject of this suit as they were resolved in the settlement agreement between the parties and were not included in the most recent EEOC charge. Plaintiff's concerns about the training and duty assignments following the 2001 settlement agreement are addressed by his breach of contract claims. Neither a delay in training nor the coverage of receptionist duties rise to the level of an ultimate employment decision.

Plaintiff's retaliation claims are based on the same employer actions as his sex discrimination claims. As discussed, none of the employer actions rise to the level of an ultimate employment decision. Thus, Plaintiff has not established the adverse employment action element of a prima facie retaliation case. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgement for all Title VII retaliation claims.

## VII.
## Conclusion

The Court **DENIES AS MOOT** Defendants' The Port of Brownsville and Deborah Lee Duke's Motion to Dismiss and Defendants' Brownsville Navigation District of Cameron County, Texas Misnamed as The Port of Brownsville and Deborah Lee Duke's First Amended Motion to Dismiss. The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment. The Court **GRANTS** the motion for summary judgment for claims against Deborah Lee Duke, claims for intentional infliction of emotional distress, claims for Title VII sex discrimination, and Title VII retaliation claims. The Court **DENIES** the motion for summary judgment for claims for breach of contract.

DONE at Brownsville, Texas, this 13th day of October, 2005.

_____
Hilda G. Tagle
United States District Judge