Source: Legal > / . . . / > **TX Federal & State Cases, Combined**
More Like: **HN2 - An adverse party's breach of contract may excuse a party's nonperformance of his contractual obligations. A party may not insist on the performance of a contract or a provision thereof where he himself is guilty of a material or substantial breach...** More ± White Hawk Ranch, Ltd. v. Hopkins, 1998 U.S. Dist. LEXIS 2651 (D. Miss. February 12, 1998, Decided )

◆Select for FOCUS™ or Delivery

*162 F.3d 832, \*; 1998 U.S. App. LEXIS 30866, \*\**

UNITED STATES OF AMERICA, Plaintiff-Appellee, versus RAYMOND CASTANEDA, Defendant-Appellant.

No. 97-40307

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

162 F.3d 832; 1998 U.S. App. LEXIS 30866

December 9, 1998, Decided

**SUBSEQUENT HISTORY: [\*\*1]** As Amended January 14, 1999.

**PRIOR HISTORY:** Appeal from the United States District Court for the Southern District of Texas. B-96-CR-328-2. Filemon B Vela, US District Judge.

**DISPOSITION:** REVERSED; sentence VACATED; and REMANDED with instructions.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant appealed from the judgment of the United States District Court for the Southern District of Texas, convicting and sentencing him for Racketeer Influenced and Corrupt Organizations Act conspiracy under 18 U.S.C.S. § 1962(d).

**OVERVIEW:** Defendant was convicted and sentenced in district court for Racketeer Influenced and Corrupt Organizations Act conspiracy under 18 U.S.C.S. § 1962(d), following plaintiff government's revocation of its transactional immunity agreement with defendant and denial of defendant's motion to dismiss his indictment. Defendant appealed, claiming that the district court erred in failing to dismiss his indictment on the basis of plaintiff's unwarranted revocation of its transactional immunity agreement with him. The court reversed and remanded, holding that the district court erred in failing to grant defendant's motion to dismiss his indictment, which

**EXHIBIT**
**1**

exis.com/research/retrieve?_m=9cf6c493b6f029ce058ae674bc9da0f9&docn... 10/17/2005

was obtained in violation of a transactional immunity agreement between plaintiff and defendant, because plaintiff failed to prove that the agreement was materially breached.

**OUTCOME:** Conviction and sentence reversed and remanded because defendant's indictment was obtained in violation of a transactional immunity agreement between plaintiff government and defendant, and plaintiff failed to prove that the agreement was materially breached.

**CORE TERMS:** omission, indictment, breached, transactional immunity, material breach, nonprosecution, bargain, prosecute, predicate, extortion, conspiracy, sentence, deprived, bribery, Hobbs Act, illegal activities, pretrial hearing, involvement, rescission, interview, plea agreement, prejudiced, marijuana, revoke, substantial performance, motion to dismiss, assault charge, grand jury, non-breaching, cooperation

### LexisNexis(R) Headnotes ✦ Hide Headnotes

Criminal Law & Procedure > Guilty Pleas

*HN1* Nonprosecution agreements, like plea **bargains, are contractual** in nature, and are therefore interpreted in accordance with general principles of contract law. Under these principles, if a defendant lives up to his end of the **bargain,** the government is bound to perform its promises. If a defendant materially breaches his commitments under the agreement, however, the government can be released from its reciprocal obligations. More Like This Headnote | *Shepardize:* Restrict By Headnote

Criminal Law & Procedure > Guilty Pleas

*HN2* When the government believes that a defendant has breached the terms of a nonprosecution agreement and wishes to be relieved of performing its part of the **bargain,** due process prevents the government from making this determination and nullifying the agreement unilaterally. Instead, the government must prove to the court by a preponderance of the evidence that (1) the defendant breached the agreement, and (2) the breach is sufficiently material to warrant rescission. If the pleadings show no factual dispute, however, the court may determine breach as a matter of law. More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Breach

*HN3* In the context of general contract law, a breach is not material unless the **non-breaching party** is deprived of the benefit of the **bargain.** The less the **non-breaching party** is deprived of the expected benefits, the less material the breach. More Like This Headnote | *Shepardize:* Restrict By Headnote

Contracts Law > Breach

**HN4** Using the concept of material breach by comparing it with the converse concept of substantial performance approach, if a party's **nonperformance is innocent,** does not **thwart** the purpose of the **bargain,** and is wholly **dwarfed** by that party's performance, the **breaching party** has substantially performed under the contract, and the **non-breaching party** is not entitled to rescission.  More Like This Headnote |
*Shepardize:* Restrict By Headnote

**COUNSEL:** For UNITED STATES OF AMERICA, Plainitff - Appellee: Michael R Dreeben, US Department of Justice, Washington, DC. Paula Camille Offenhauser, Assistant U. S. Attorney, US Attorney's Office, Houston, TX. Jonathan Goldman Cedarbaum, Jessie Acker Allen, US Department of Justice, Washington, DC.

For RAYMOND CASTANEDA, Defendant - Appellant: Lawrence Irwin Zinn, San Antonio, TX.

**JUDGES:** Before WISDOM, WIENER, and DENNIS, Circuit Judges.

**OPINIONBY:** WIENER

**OPINION:**

[*833]  WIENER, Circuit Judge:

In this direct criminal appeal, defendant-appellant Raymond Castaneda challenges his conviction of RICO conspiracy under 18 U.S.C. § 1962(d), alleging errors at both the indictment and trial stages of his case. Concluding that the district court erred in failing to dismiss Castaneda's indictment on the basis [*834] of the government's unwarranted revocation of its transactional immunity agreement, we reverse Castaneda's conviction, vacate [**2] his sentence, and remand for entry of a judgment of acquittal.

I

FACTS AND PROCEEDINGS

Castaneda owned an auto repair shop and towing service in Brownsville, Texas. From 1990 to 1994, William Weaver worked as an investigator in the Cameron County Attorney's Office in Brownsville. During these years, Castaneda and Weaver conspired to solicit bribes from individuals accused of driving while intoxicated (DWI) in exchange for getting the charges dismissed

or sentences reduced. Castaneda's role in this conspiracy was that of middleman, referring "clients" to Weaver, arranging meetings, receiving payments, and suggesting strategies for accomplishing fixes. Weaver's role on the other hand was that of principal, making the necessary arrangements within the County Attorney's Office to have the charges reduced or disappear.

Suspecting corruption, the FBI began an investigation of the County Attorney's Office. As part of this activity, Special Agent Jose Louis Cisneros sought Castaneda's cooperation. This, in turn, led AUSA Mervyn Milton Mosbacker and Castaneda to enter into an informal, written proffer agreement on January 24, 1995, pursuant to which Castaneda was granted use immunity. [**3] n1 Sometime later, AUSA Mosbacker and Castaneda entered into another agreement n2 -- this one oral -- in which Castaneda was granted transactional immunity in exchange for his obligation to "tell everything he knew" about Weaver's criminal activity. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 According to the terms of this agreement, Castaneda was granted "use" but not "derivative use" immunity. In other words, the government promised not to use any of the information or statements provided by Castaneda directly against him in any criminal proceeding, but reserved its right to pursue investigative leads derived from Castaneda's statements and use this "derivative" evidence against him.

n2 Although there is some question as to whether AUSA Mosbacker had the authority to grant Castaneda transactional immunity, for the purposes of this appeal, the government does not dispute the existence of a valid agreement.

n3 Pursuant to this agreement, Castaneda also agreed to provide information about the illegal activities of Alex Perez, the Sheriff of Cameron County.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**4]

On January 24, 1995 and again on November 17, 1995, Castaneda was questioned by Agent Cisneros and AUSA Mosbacker. In those interviews, Castaneda acknowledged that he had participated as Weaver's intermediary in several acts of bribery and extortion connected to the "fixing" of criminal prosecutions brought by the County Attorney's Office. Castaneda identified a number of individuals who had knowledge of, or had been involved in, the scheme. These included (1) Jose Luis Reyes, n4 (2) Julio Gonzalez, n5 (3) Jeff Lewis, n6 (4) Chuy Hinojosa, n7 (5) Guadalupe Barajas, n8 (6) Federico

Morales, n9 (7) **[*835]** Alejandro Cano, n10 and (8) Mario Meliton Garcia. n11

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Castaneda told the government that, in addition to Reyes's involvement in drug trafficking, he often paid large sums of cash to Sheriff Perez (presumably as political contributions). On many of these occasions, admitted Castaneda, he served as the conduit between Reyes and Perez.

n5 Castaneda told the government that he was approached by Julio Gonzalez in 1992 for assistance in getting his DWI case reduced. Gonzalez gave Castaneda $ 1,000 to pass on to Weaver as payment for the fix. Castaneda acknowledged keeping approximately $ 100 for himself. **[**5]**

n6 Castaneda advised the government that Gonzalez approached him on another occasion for assistance in getting dismissed a DWI for Jeff Lewis. Castaneda was unsure if Weaver had ultimately been successful in fixing the case.

n7 Castaneda told the government that an individual known as "Chuy" Hinojosa had approached Weaver and given him an unknown amount of money. When Weaver was unable to fix the case, Hinojosa's money was returned.

n8 Castaneda told the government that Barajas -- who was on probation and afraid she would fail a urine test -- paid Weaver $ 6,000 to have the test fixed.

n9 Castaneda told the investigators that Morales was arrested for DWI and possession of a firearm and that he paid Weaver $ 1,000 to get the case dismissed. Castaneda admitted that, although he did not receive any money directly from this transaction, Weaver paid him $ 1,000 on a separate occasion to "keep [him] happy."

n10 Castaneda told the government that Cano paid Weaver $ 15,000 to fix a cocaine possession charge. When Weaver was unable to get the case dismissed or reduced, the money was returned to Cano's family.

n11 Castaneda informed the agents that Meliton Garcia paid Weaver $ 500 to get an assault charge dismissed or reduced. Out of that money, Castaneda admitted to having kept $ 50.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**6]

On October 22, 1996 -- almost one year after the November, 1995 interview with Castaneda, and at the end of the grand jury's deliberations -- the government wrote to Castaneda advising that, because he had "failed to provide . . . relevant and material information concerning criminal activities of which he was well aware," he had violated the transactional immunity agreement, so the government was revoking its promise not to prosecute. The very next day, a grand jury returned a seven-count indictment n12 against Castaneda and Weaver. n13

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 Count One alleged a pattern of racketeering activity through predicate acts of bribery and extortion -- the taking of payments for fixing DWI and marijuana possession prosecutions -- in violation of 18 U.S.C. § 1962(c) (RICO). Count Two alleged a conspiracy to engage in the same pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). Counts Three through Six alleged specific acts of extortion involving both defendants, in violation of 18 U.S.C. §§ 1951 and 1952 (Hobbs Act). Count Seven concerned an act of extortion involving only Weaver. [**7]

n13 Weaver pled guilty to the RICO substantive count, and his sentence was reduced to approximately 17 months. The reduction of Weaver's sentence was contingent on his willingness to testify truthfully against Castaneda at trial.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Castaneda filed two motions to dismiss the indictment, in one of which he argued that the government had breached its agreement not to prosecute. n14 After an evidentiary hearing, the district court denied Castaneda's motion without reasons.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 In his other motion, Castaneda sought to have the indictment dismissed on the ground that the government had breached its proffer agreement by using his immunized testimony in the grand jury proceeding. The district court denied this motion but we do not reach it.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Thereafter, Castaneda was convicted by a jury of RICO conspiracy. n15 The district court entered judgment in accordance with the jury's verdict, and sentenced Castaneda to 33 months in prison, [**8] to be followed by a three year period of supervised release, and a fine of $ 7,500.00. Castaneda appeals his conviction. n16

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n15 The jury acquitted Castaneda of the RICO substantive count and the four Hobbs Act counts. The count on which Castaneda was convicted identified as predicate acts five DWI cases that he and Weaver conspired to fix. Named as the bribe-payors/extortion victims in these cases are Julio Gonzalez (a participant in two transactions -- his own and that involving Maurice Middleton), Meliton Garcia, Rafael Gonzalez and Sammy Snodgrass (a participant in the transaction involving Jeff Lewis). Predicate Act Six -- referring to the dismissal of a marijuana charge for Silverio Garza -- pertained only to Weaver.

n16 On appeal, Castaneda asserts four distinct errors that allegedly warrant the reversal of his conviction. Because we conclude that the government breached its transactional immunity agreement and that the district court erred in failing to dismiss Castaneda's indictment on this ground, we do not reach Castaneda's other three assignments of error.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**9]

II

**ANALYSIS**

Castaneda argues that the district court should have granted his motion to dismiss the indictment because the government breached its oral agreement not to prosecute. Implicit in this claim is the charge that the government

failed to show by a preponderance of the evidence that Castaneda materially breached the immunity agreement, without which the government could not repudiate the contract and prosecute him. We agree.

*HN1* Nonprosecution agreements, like plea **bargains, are contractual** in nature, and are therefore interpreted in accordance with general principles of contract law. n17 Under these principles, if a defendant lives up to his end of the **bargain,** the government is bound [*836] to perform its promises. n18 If a defendant "materially breaches" his commitments under the agreement, however, the government can be released from its reciprocal obligations. n19 *HN2* When the government believes that a defendant has breached the terms of a nonprosecution agreement and wishes to be relieved of performing its part of the **bargain** -- here, refraining from prosecuting the defendant -- due process prevents the government from making this determination and nullifying [**10] the agreement unilaterally. n20 Instead, the government must prove to the court by a preponderance n21 of the evidence that (1) the defendant breached the agreement, and (2) the breach is sufficiently material to warrant rescission. n22 If the pleadings show no factual dispute, however, the court may determine breach as a matter of law. n23 Because the district court issued no factual findings in this case, we review Castaneda's claim of breach of a nonprosecution agreement de novo. n24

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n17 United States v. Moulder, 141 F.3d 568, 571 (5th Cir. 1998); United States v. Ballis, 28 F.3d 1399, 1409 (5th Cir. 1994); United States v. Fitch, 964 F.2d 571, 574 (6th Cir. 1992); United States v. Brown, 801 F.2d 352, 354 (8th Cir. 1986).

n18 United States v. Tilley, 964 F.2d 66, 70 (1st Cir. 1992).

n19 Ballis, 28 F.3d at 1409; Tilley, 964 F.2d at 70; United States v. Crawford, 20 F.3d 933, 935 (8th Cir. 1994).

According to Castaneda, the government's sole remedy for his alleged breach would be prosecution for perjury, not rescission of the agreement. Castaneda claims that the government is limited to the remedies stated in the agreement. Because the oral agreement did not specifically contemplate prosecution for immunized crimes in the event he failed to provide full and truthful information, argues Castaneda, the government may not revoke its grant of transactional immunity. In support of this proposition, Castaneda cites United States v. Fitch, 964 F.2d 571, 575 (6th Cir. 1992). [**11]

n20 United States v. Verrusio, 803 F.2d 885, 888 (7th Cir. 1986); United States v. Tarrant, 730 F. Supp. 30, 32 (N.D. Tex. 1990).

n21 United States v. Price, 95 F.3d 364, 367 (5th Cir. 1996)(stating that, in determining whether government's actions have breached terms of plea agreement, defendant bears burden of demonstrating underlying facts that establish breach by preponderance of evidence); United States v. Witte, 25 F.3d 250, 262 (5th Cir. 1994), aff'd, 515 U.S. 389, 132 L. Ed. 2d 351, 115 S. Ct. 2199 (1995)(same); Tilley, 964 F.2d at 71 (holding that before government may revoke agreement, it must show by a preponderance of evidence that the defendant has committed a **substantial breach**); United States v. Packwood, 848 F.2d 1009, 1011 (9th Cir. 1988)(same).

We recognize, however, that not all courts have adopted this standard. See, e.g., United States v. Gonzalez-Sanchez, 825 F.2d 572, 578 (1st Cir. 1987) (holding that government bears the burden of demonstrating by adequate evidence that there has been a **substantial breach** by defendant); State v. Rivest 106 Wis. 2d 406, 316 N.W.2d 395, 398-99 (Wis. 1982)(adopting a beyond a reasonable doubt standard); United States v. Skalsky, 616 F. Supp. 676, 681 (D.N.J. 1985)(requiring proof of material breach by clear and convincing evidence). [**12]

n22 See Packwood, 848 F.2d at 1011; Tarrant, 730 F. Supp. at 32.

n23 Packwood, 848 F.2d at 1011; United States v. Calabrese, 645 F.2d 1379, 1390 (10th Cir. 1981).

n24 Moulder, 141 F.3d at 571; Price, 95 F.3d at 367; United States v. Laday, 56 F.3d 24, 26 (5th Cir. 1995); Wittie, 25 F.3d at 262; United States v. Valencia, 985 F.2d 758, 760 (5th Cir. 1993).

The government argues that the appropriate standard of review is clear error. See United States v. Gibson, 48 F.3d 876, 878 (5th Cir. 1995); Ballis, 28 F.3d at 1409. We agree that this is the appropriate standard for reviewing a district court's findings as to the underlying facts that constitute breach. In the absence of such factual findings, however, we must conduct a de novo review of every aspect of Castaneda's purported breach.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In the instant case, the government promised not to prosecute Castaneda for his role in the bribery scheme **[\*\*13]** in exchange for his full and truthful disclosure of information implicating Weaver. After dealing with Castaneda for more than a year, the government rescinded this agreement at the eleventh hour, and Castaneda was indicted by the grand jury one day later. At a pretrial hearing on Castaneda's motion to dismiss his indictment, n25 the government presented evidence purporting to show that Castaneda had **[\*837]** breached his end of the **bargain** by failing to reveal "relevant and material information . . . of which he was well aware." n26 Because of these alleged omissions, contended the government, it was entitled to rescind the agreement and be relieved of its obligation not to prosecute. Castaneda countered that he gave the government considerable, accurate, and incriminating information about Weaver, and that any omissions Castaneda made were essentially inadvertent or duplicative and thus did not amount to a material breach of the agreement. n27 In so many words, he argued substantial performance.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n25 The government did not seek a judicial determination of breach until after Castaneda had been indicted, and Castaneda does not contend that a hearing had to have been held prior to this time. For the purposes of this opinion, therefore, we do not pass on the issue of when, during the progress of a criminal investigation, a judicial determination of breach is required to comport with due process. See Verrusio, 803 F.2d at 888-89 (discussing whether defendant's indictment constituted a deprivation of his interest in the enforcement of a plea agreement, and whether he was entitled to a preindictment hearing to determine whether he had breached his obligations under that agreement). **[\*\*14]**

n26 All of the evidence presented at the pretrial hearing pertained to Castaneda's omission of information about illegal activities involving Weaver. It appears that the government introduced evidence in camera regarding Castaneda's alleged omissions about activities involving Sheriff Alex Perez. It is not clear whether the court took this evidence into account when determining Castaneda's breach, and this evidence is not in the record on appeal. Although the government maintains its position that Castaneda breached the nonprosecution agreement with regards to both Weaver and Perez, the government has failed to cite any specific omissions involving Perez and has failed to see to it that its in camera inculpatory evidence is included in the record on appeal.

n27 Castaneda's lawyer -- Ernesto Gamez, Jr. -- wrote a letter to AUSA Mosbacker, dated December 12, 1996, in which he argued that Castaneda's inadvertent omission of some names does not amount to a lie. Forgetfulness, argued Gamez, is not the same as noncompliance. Furthermore, Gamez contended, the government "either already possessed [the omitted names] or acquired this additional information from [Castaneda's] statements." In the letter, Gamez noted that he had spoken with Agent Cisneros on several occasions, and that he had been led to believe that the government was fully satisfied with the information provided by Castaneda. Gamez also claimed that Agent Cisneros had agreed to contact him in the event the government needed additional information.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**15]

There is no clear Fifth Circuit law on the issue of what constitutes a "material breach" of a nonprosecution agreement. n28 *HN3* In the context of general contract law, however, we have recognized that a breach is not material unless the **non-breaching party** is deprived of the benefit of the **bargain.** n29 The less the **non-breaching party** is deprived of the expected benefits, the less material the breach. n30

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n28 For some of the circumstances in which courts have allowed the government to rescind plea agreements, see Ballis, 28 F.3d at 1409 (withholding of information, untruthful testimony, and inducement of plea agreement by fraud); Hentz v. Hargett, 71 F.3d 1169, 1172-75 (5th Cir. 1996)(informing prosecutor of intent to change testimony is circumstance amounting to anticipatory repudiation which justifies revocation of agreement); Tarrant, 730 F. Supp. at 32-33(refusing to cooperate by failing to meet with government representatives, failing to testify before grand jury and fleeing jurisdiction to avoid cooperation); United States v. Donahey, 529 F.2d 831, 832 (5th Cir. 1976)(providing evasive, misleading answers, answers which could not be verified, and refusing to answer questions). [**16]

n29 Hanson Prod. Co. v. Americas Ins. Co, 108 F.3d 627, 630 (5th Cir. 1997) (relying on Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 692-92 (Tex. 1994) in holding that, where an insurer is not prejudiced by a breach, the breach is not material, the insurer has not been deprived of the benefit of the

**bargain,** and it should not be relieved of its obligation to provide coverage).

The "benefit of the **bargain**" standard has been adopted, at least in part, by the Eighth Circuit in determining breach of an immunity agreement. In United States v. Crawford, 20 F.3d 933 (8th Cir. 1994), the court relied on the following three factors -- borrowed from the Restatement of Contracts -- to guide their determination: (1) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (2) the likelihood that the party failing to perform will cure his failure; and (3) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing. Id. at 935. The other considerations listed in the Restatement as significant in determining the materiality of a breach include (1) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; and (2) the extent to which the party failing to perform or to offer to perform will suffer forfeiture. Restatement (Second) of Contracts § 241 (1981).

In United States v. Fitch, the Sixth Circuit adopted a somewhat more rigorous standard, holding that the government must prove a "bad faith, intentional, substantial omission" on the part of the defendant before it can be released from its obligations. 964 F.2d at 574 (adopting the standard set forth in United States v. Castelbuono, 643 F. Supp. 965, 971 (E.D.N.Y. 1986)). [**17]

n30 Hernandez v. Gulf Group Lloyds, 875 S.W.2d 691, 693 (Tex. 1994).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Courts within this Circuit have clarified the concept of material breach by comparing it with the converse concept of substantial [*838] performance. n31 **HN4** Using this approach, if a party's "**nonperformance . . . is innocent,** does not **thwart** the purpose of the **bargain,** and is wholly **dwarfed** by that party's performance," the **breaching party** has substantially performed under the contract, and the **non-breaching party** is not entitled to rescission. n32 We think that this approach is equally applicable in determining the materiality of a breach in the context of nonprosecution agreements. n33 Given the government's burden of proof, our de novo application of this test demonstrates that the relatively insignificant omissions by Castaneda did nothing to frustrate the government's prosecution of Weaver. Moreover, these omissions pale by comparison to the plethora of information delivered by Castaneda.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n31 See White Hawk Ranch, Inc. v. Hopkins, 1998 U.S. Dist. LEXIS 2651, No. CIV.A.91-CV29-DD, 1998 WL 94830, at *3 (N.D.Miss. Feb. 12, 1998). See also 2 E. Allan Farnsworth, Farnsworth on Contracts § 8.16 at 442 (2d ed. 1990)(recognizing that substantial performance is performance without a material breach, and a material breach results in performance that is not substantial). [**18]

n32 White Hawk Ranch, No. CIV.A.91-CV29-DD, 1998 WL 94830, at *3.

n33 The government cites United States v. Gerant, 995 F.2d 505, 509 (4th Cir. 1993) in support of its argument that Castaneda's breach of the agreement should not be overlooked simply because he furnished the government with some useful information. In Gerant, however, the court concluded that the defendant's breach of the nonprosecution agreement had "seriously impaired ongoing drug investigations and prosecutions," thereby entitling the government to rescission of the agreement. Id. In other words, the government had been prejudiced by the defendant's breach. Moreover, the court was careful to point out that there may be cases "where the extent of information and cooperation provided by a defendant who has trivially breached a nonprosecution agreement is so great that the court is persuaded that the defendant substantially complied with the agreement." Id. at 509 n.4. Thus, while the Fourth Circuit rejected the defendant's substantial compliance argument under the particular facts of the case, Gerant does not stand for a per se rejection of this argument.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**19]

The government argues that Castaneda committed a material breach of the agreement by failing to reveal Weaver's involvement in the dismissal of DWIs for Meliton Garcia, Maurice Middleton and Rafael Gonzalez, as well as the dismissal of a gun charge for Jose Galvan. n34 Although it is clear that Castaneda omitted some information during his interviews with the government, it is anything but clear that, when viewed in the context of what the government already knew or learned derivatively from other sources, these omissions rise to the level of a material breach, even collectively.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n34 Agent Cisneros testified at the pretrial hearing that the government knew

about the cases of Meliton Garcia, Maurice Middleton and Rafael Gonzalez before interviewing either Castaneda or Weaver. The government conducted interviews with Weaver on February 27, 1995, March 22, 1995, May 31, 1995 and January 29, 1996.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Castaneda provided the government with substantial, detailed accounts of bribery involving Weaver and seven other [**20] individuals -- Julio Gonzalez, Jeff Lewis, Chuy Hinojosa, Guadalupe Barajas, Federico Morales, Alejandro Cano, and Meliton Garcia. Weaver's illegal activities with three of these individuals eventually formed the basis for predicate racketeering acts and Hobbs Act counts in the indictment. n35

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n35 The indictment listed, as RICO predicate acts, instances of bribery and extortion involving Julio Gonzalez (Act One -- for dismissal of his own DWI charge), Meliton Garcia (Act Two -- albeit for the dismissal of his DWI charge rather than his assault charge), and Jeff Lewis (Act Five -- through Sammy Snodgrass for dismissal of Lewis's DWI). Illegal activities with these same individuals formed the basis of Counts Three, Four, and Six -- Hobbs Act violations.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Even the government's examples of omissions cut both ways. With regard to Meliton Garcia, Castaneda did provide the government with information about the dismissal of an assault charge; he merely failed to mention the dismissal of a DWI charge as well. Thus, Castaneda [**21] led the government to the right source, even if his tip was not complete.

Likewise, although Castaneda did not disclose information about Weaver's dismissal of Maurice Middleton's DWI, n36 Castaneda did provide accurate information about his own involvement as a go-between for Weaver and Julio Gonzalez -- and, thereafter, Gonzalez confessed to the government that he had contacted Castaneda for help getting DWIs [*839] dismissed both for himself and Middleton, as well as for Jeff Lewis. Thus, Castaneda did indirectly that about which the government faults him for not doing directly.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n36 Maurice Middleton was named in predicate Act Three of the indictment.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Finally, with regard to Rafael Gonzalez n37, Agent Cisneros and AUSA Mosbacker were inconsistent about the extent of information Castaneda provided. In the pretrial motion hearing, Agent Cisneros repeatedly testified that Castaneda had discussed Rafael's DWI, only to recant this assertion on further questioning. AUSA Mosbacker admitted that he thought [**22] Castaneda had discussed illegalities in which Weaver and Rafael were involved, but maintained that Castaneda did not mention the DWI. Even if Castaneda failed to reveal any direct information about Rafael, though, it is undisputed that he did provide substantial information about Jose Reyes -- a source intimately connected with Rafael Gonzalez. Thus, it appears that the only Weaver-related individual about whom Castaneda failed entirely to provide information was Jose Galvan -- for dismissal of a gun charge that did not serve as the basis for any count in the indictment. n38

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n37 Rafael Gonzalez was named in predicate Act Four and Count Five.

n38 In addition, it appears that Castaneda did not provide any information about an alleged DWI dismissal for an individual named Perez (first name unknown). When asked during the pretrial hearing to list the omissions constituting Castaneda's breach, however, AUSA Mosbacker did not mention this transaction. Neither is the Perez omission mentioned in the government's brief to this Court.

We note that, in addition to dismissals of charges against Julio Gonzalez, Meliton Garcia, Maurice Middleton, Rafael Gonzalez, and Jeff Lewis, the indictment identified as a predicate act for the substantive RICO count the dismissal of a marijuana charge for Silverio Garza (Act Six). This same transaction formed the basis of Count Seven. Castaneda was not named in Act Six or Count Seven, however, and the government does not assert that he had any knowledge of this transaction.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**23]

Having reviewed the briefs of the parties, heard oral argument, and thoroughly reviewed the record, we are now satisfied that, despite Castaneda's relatively insignificant omissions, the government got the benefit

of its **bargain** and has failed to carry its burden of proving a material breach by Castaneda. The government granted Castaneda transactional immunity with the intention of receiving in return leads and information pertinent to its investigation of Weaver and corruption in the Cameron County Attorney's Office. Castaneda provided both direct and indirect leads, and volumes of such information as well. In fact, Castaneda gave the government significant quantities of detailed information about Weaver's involvement in at least seven illegal transactions conducted through the County Attorney's Office. n39 Although it appears that Castaneda's performance was not perfect -- that he did not literally "tell everything he knew," as he was technically required to do under the agreement -- the government has failed to show that these omissions were intentional or, more importantly, that the government was prejudiced. Much of the relatively little that Castaneda omitted was already known [**24] to the government before interrogating Castaneda, or was discovered from other sources. When viewed in light of the overwhelming quantity of information he furnished about numerous individuals and incidents involving Weaver, much that Castaneda omitted must be classified either as cumulative or surplusage. In the absence of proof of substantial or intentional omissions by Castaneda constituting prejudice to the government, the district court erred in permitting the government to revoke the nonprosecution agreement with Castaneda and prosecute him in this case.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n39 Including dismissals for Julio Gonzalez, Jeff Lewis, Chuy Hinojosa, Guadalupe Barajas, Federico Morales, Alejandro Cano, and Meliton Garcia. The information that Castaneda provided regarding Jose Reyes was directly pertinent to the illegal activities of Sheriff Perez but not Weaver.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

III

CONCLUSION

It ill behooves government agents and prosecutors to enter into agreements of transactional immunity with mid-level co-conspirators, milk them of substantial [**25] leads and information that literally make the government's case against the "big fish" while coincidentally giving the government a lay-down [*840] winning hand against the cooperating co-conspirator; then, at the last moment, rely on some technical or relatively minor deficiency in performance to pull the rug from under the cooperating informant by claiming a breach and proceed to prosecute him in a slam-dunk case based largely on his own revelations. Yet, this is precisely what we

perceive to have happened here, and due process cannot abide such behavior. For the reasons explained above, we conclude that the district court erred in failing to grant Castaneda's motion to dismiss the indictment, which was obtained in violation of a transactional immunity agreement, that the government failed to prove was materially breached. Castaneda's conviction of RICO conspiracy is reversed, the sentence imposed in accordance with that conviction is vacated, and the case is remanded to the district court for entry of a judgment of acquittal.

REVERSED; sentence VACATED; and REMANDED with instructions.

↑ Return to top
Source: Legal > / . . . / > TX Federal & State Cases, Combined
More Like: HN2 - **An adverse party's breach of contract may excuse a party's nonperformance of his contractual obligations. A party may not insist on the performance of a contract or a provision thereof where he himself is guilty of a material or substantial breach of that contract or provision. The party first committing a substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure to perform if the promises are dependent. The adverse party's breach, however, must be material to excuse such nonperformance. Where the nonperformance of on party to the contract is innocent, does not thwart the purpose of the bargain, and is wholly dwarfed by that party's performance, the breaching party has substantially performed its obligations and the non-breaching party is not excused from its responsibility under the contract.** White Hawk Ranch, Ltd. v. Hopkins, 1998 U.S. Dist. LEXIS 2651 (D. Miss. February 12, 1998, Decided )
View: Full
Date/Time: Monday, October 17, 2005 - 11:44 AM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize*® that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.